```
                    UNITED STATES DISTRICT COURT
                              FOR THE
                       DISTRICT OF VERMONT

TRUE VELOCITY AMMUNITIONS,    )
L.L.C. and LONE STAR FUTURE   )
WEAPONS, INC.,                )
                              )
     Plaintiffs,              )
                              )
          v.                  )    Case No. 2:24-cv-522
                              )
SIG SAUER, INC.,              )
                              )
     Defendant.               )
```

**OPINION AND ORDER**

Plaintiffs True Velocity Ammunitions, L.L.C. ("True Velocity") and Lone Star Future Weapons, Inc. ("Lone Star") bring this action claiming trade secrets misappropriation by Defendant SIG Sauer, Inc. ("SIG Sauer"). Pending before the Court is Plaintiffs' motion to dismiss SIG Sauer's counterclaim, which seeks a declaratory judgment of patent noninfringement. For the reasons set forth below, Plaintiffs' motion is denied.

**Background**

Plaintiffs True Velocity and Lone Star compete with Defendant SIG Sauer to provide military weapons. Weapons manufactured by both True Velocity and SIG Sauer include light and medium machine guns. Plaintiffs claim that SIG Sauer has misappropriated trade secrets relating to machine gun technologies in violation of the Vermont Trade Secrets Act, 9 V.S.A. § 4601, *et seq.*

True Velocity is licensed to use Lone Star's intellectual property, which Lone Star reportedly acquired from General Dynamics. General Dynamics Ordnance and Tactical Systems ("GD-OTS") is a wholly owned subsidiary of General Dynamics. As a result of research and development efforts beginning in 2009, GD-OTS allegedly developed a Lightweight Medium Machine Gun ("LMMG") featuring a recoil mitigation system called Short Recoil Impulse Averaging ("SRIA"). SRIA reduces recoil without increasing the weapon's mass or receiver length, resulting in a lightweight weapon with heavy machine gun capability. The Complaint alleges that GD-OTS refined the design of the LMMG over a period of several years.

In October 2018, SIG Sauer debuted a direct competitor to the GD-OTS LMMG. The Complaint alleges that prior to that time, no company other than GD-OTS had produced a lightweight medium machine gun that met the Army's specifications. In January 2019, GD-OTS employees allegedly attended a demonstration of SIG Sauer's weapon and "noted that it appeared to utilize the substantially same SRIA technology developed at GD-OTS." ECF No. 10 at 13, ¶ 49. That same year, lawyers for GD-OTS sent a letter inquiring about SIG Sauer's alleged use of GD-OTS proprietary and confidential information.  SIG Sauer responded to the GD-OTS allegation at that time, and GD-OTS reportedly took no further action.

The Complaint alleges that True Velocity and SIG Sauer recently delivered competing machine gun prototype weapons to the U.S. Military for evaluation and a potential production contract. Plaintiffs again claim, "based on information and belief, [that] SIG Sauer's submission incorporates a substantial degree of Plaintiffs' impulse averaging and LMMG trade secrets." *Id.* at 15, ¶ 60. The First Amended Complaint seeks damages, including punitive damages, and attorneys' fees.

SIG Sauer has filed a counterclaim requesting a declaratory judgment relating to U.S. Patent 8,919,238 ("the '238 patent").[1] The '238 patent, issued on December 20, 2014 and originally assigned to General Dynamics, is titled "Weapon system with short recoil impulse average operating group." SIG Sauer alleges, on information and belief, that Plaintiffs are the current owners and/or exclusive licensees of the '238 patent, and that they claim the right to enforce the patent. SIG Sauer further claims that Lone Star Chairman Craig Etchegoyen "has made a lucrative career of acquiring patents invented by others and asserting those patents against operating companies in courts around the world, and otherwise improperly using lawsuits

---

[1] SIG Sauer's counterclaim and the pending motion to dismiss each preceded the filing of the First Amended Complaint. Although SIG Sauer has not submitted a pleading in response to the First Amended Complaint, the Court assumes that it is still asserting a counterclaim.

3

as leverage for business purposes." ECF No. 32 at 25, ¶ 40. The counterclaim alleges that Plaintiffs have "repeatedly and improperly sought to use their actual and threatened lawsuits against SIG Sauer as a tool to threaten SIG Sauer's customer relationships." *Id.*, ¶ 34.

As an example, SIG Sauer cites Plaintiffs' patent litigation against it in Europe. SIG Sauer submits that the '238 patent is a counterpart to European Patent No. 2,748,552 ("the '552 patent"). On May 29, 2024, Lone Star filed suit against SIG Sauer in Germany claiming infringement of the '552 patent. On September 9, 2024, Plaintiffs filed suit against SIG Sauer in the Netherlands, again claiming infringement of the '552 patent. Both European actions reportedly seek an injunction preventing SIG Sauer from selling its light and medium machine guns to allies of the United States.

SIG Sauer continues to maintain that it is not directly or indirectly infringing the '238 patent. Comparing its guns to the claims in the '238 patent, SIG Sauer submits there are substantive differences with respect to such elements as the location of the drive spring; the function of the op-rod assembly; the use of "runout" to stop the momentum of the operating group; stoppage of the barrel and barrel extension's rearward momentum; and the role of the bolt assembly. Despite these reported differences, and fearing similar patent

litigation in the United States, SIG Sauer contends that it needs a declaratory judgment of noninfringement to prevent Plaintiffs from using such litigation as part of their "worldwide litigation campaign . . . to unfairly compete with SIG Sauer." *Id.*, ¶ 42.

Plaintiffs submit that, aside from the actions pending in Germany and the Netherlands, they have never asserted any of their other patents in either the United States or foreign jurisdictions. Nor have they made any overt threat to assert a United States patent against SIG Sauer.

## Discussion

Plaintiffs move to dismiss for lack of subject matter jurisdiction, arguing that because they are not threatening legal action on the '238 patent there is no "case of actual controversy" as required by the Declaratory Judgment Act, 28 U.S.C. § 2201(a). Plaintiffs submit their motion under Federal Rule of Civil Procedure 12(b)(1). Rule 12(b)(1) allows for dismissal of a complaint "when the district court lacks the statutory or constitutional power to adjudicate it.'" *Nike, Inc. v. Already, LLC*, 663 F.3d 89, 94 (2d Cir. 2011) (citing *Makarova v. United States*, 201 F.3d 110, 113 (2d Cir. 2000)).

"A [party] asserting subject matter jurisdiction has the burden of proving by a preponderance of the evidence that it exists." *Morrison v. Nat'l Australia Bank Ltd.*, 547 F.3d 167,

5

170 (2d Cir. 2008). While the Court must accept all factual allegations in SIG Sauer's counterclaim as true, the jurisdictional showing must be made affirmatively; "it is not made by drawing from the pleadings inferences favorable to the party asserting it." *Id.* When reviewing a motion to dismiss for lack of subject matter jurisdiction, the Court may consider evidence outside the pleadings. *See Makarova*, 201 F.3d at 113.

"[T]he phrase 'case of actual controversy' in the [Declaratory Judgment] Act refers to the type of 'Cases' and 'Controversies' that are justiciable under Article III" of the Constitution. *MedImmune, Inc. v. Genentech, Inc.*, 549 U.S. 118, 127 (2007). Such a controversy must be "between parties having adverse legal interests, of sufficient immediacy and reality to warrant the issuance of a declaratory judgment." *Maryland Cas. Co. v. Pac. Coal & Oil Co.*, 312 U.S. 270, 273 (1941). *MedImmune* requires courts to consider "whether the adversity of legal interests that exists between the parties is 'real and substantial' and 'admi[ts] of specific relief through a decree of a conclusive character, as distinguished from an opinion advising what the law would be upon a hypothetical state of facts.'" *Nike*, 663 F.3d at 95-96 (quoting *MedImmune*, 549 U.S. at 127 (internal quotation omitted)). The Supreme Court has acknowledged that the case law "do[es] not draw the brightest of lines between those declaratory-judgment actions that satisfy

6

the case-or-controversy requirement and those that do not." *MedImmune*, 549 U.S. at 127.

Applying the Supreme Court's holding in *MedImmune*, the Federal Circuit has held that "declaratory judgment jurisdiction generally will not arise merely on the basis that a party learns of the existence of a patent owned by another or even perceives such a patent to pose a risk of infringement, without some affirmative act by the patentee." *SanDisk Corp. v. STMicroelectronics, Inc.*, 480 F.3d 1372, 1380-81 (Fed. Cir. 2007). An affirmative act by the patentee is "conduct that can be reasonably inferred as demonstrating intent to enforce [the] patent." *Hewlett-Packard Co. v. Acceleron LLC*, 587 F.3d 1358, 1363 (Fed. Cir. 2009); *see also Asia Vital Components Co. v. Asetek Danmark A/S*, 837 F.3d 1249, 1253 (Fed. Cir. 2016). At the same time, "jurisdiction is not defeated by a party's decision to refrain from taking some action and thus make what would otherwise be an imminent threat of suit at least remote, if not nonexistent." *Gelmart Indus. v. Eveready Battery Co.*, 120 F. Supp. 3d 327, 331 (S.D.N.Y. 2014) (quoting *MedImmune*, 549 U.S. at 128) (internal quotation marks and alterations omitted). There is no dispute that, after *MedImmune*, subject matter exists where there is "both (1) an affirmative act by the patentee related to the enforcement of his patent rights, [] and (2) meaningful preparation to conduct potentially infringing

7

activity." *Assoc. for Molecular Pathology v. U.S.P.T.O.*, 653 F.3d 1329, 1343 (Fed. Cir. 2011).[2]

In *MedImmune*, the Supreme Court considered whether the licensee of a patent had standing to seek a judgment declaring the underlying patent invalid, unenforceable, or not infringed without first breaching or terminating the license agreement. 549 U.S. at 137. The Supreme Court found that subject matter jurisdiction existed over the plaintiff's declaratory judgment claim and rejected the Federal Circuit's "reasonable apprehension of suit" test. *Id.* at 132 n.11. The Court held that the jurisdictional analysis must be based instead on an examination of "all the circumstances." *Id.* at 127. Under that test, "the question in each case is whether the facts alleged, under all the circumstances, show that there is a substantial controversy, between the parties having adverse legal interests, of sufficient immediacy and reality to warrant the issuance of a declaratory judgment." *Id.* (quoting *Maryland Cas. Co.*, 312 U.S. at 273). This "more lenient legal standard facilitates or enhances the availability of declaratory judgment jurisdiction in patent cases," with a resulting "ease of achieving

---

[2] "Whether an actual case or controversy exists so that a district court may entertain an action for a declaratory judgment of non-infringement and/or invalidity is governed by Federal Circuit law." *MedImmune, Inc. v. Centocor, Inc.*, 409 F.3d 1376, 1378 (Fed. Cir. 2005), *overruled on other grounds by MedImmune, Inc. v. Genentech, Inc.*, 549 U.S. 118 (2007)).

declaratory judgment jurisdiction." *Micron Tech. v. Mosaid Techs. Inc.*, 518 F.3d 897, 902 (Fed. Cir. 2008).

In this case, SIG Sauer contends that Plaintiffs have taken multiple affirmative actions related to enforcement of their alleged patent rights. They first cite the lawsuits filed against it in Germany and the Netherlands. As noted by Plaintiffs in their briefing, courts are divided on the whether to give weight to "the fact of suit on a corresponding foreign patent." ECF No. 48 at 3 (quoting *Teva Pharmaceuticals USA, Inc. v. Abbott Lab.*, 301 F. Supp. 2d 819, 822 (N.D. Ill. 2004)); *compare Ethicon, Inc. v. American Cyanamid Co.*, 369 F. Supp. 934, 937 (D.N.J. 1973) (concluding that suit in England gave rise to "an existing controversy" in the United States) *with Comba Telecom, Inc. v. Andrew LLC*, No. CV 12-311-GMS, 2015 WL 13817412, at *1 (D. Del. July 15, 2015) ("The mere existence of foreign litigation does not create a real and immediate threat."). In *Teva Pharmaceuticals*, the court concluded "[t]he better view is that, while [the] threat of an infringement suit on [a] counterpart patent may not be dispositive of its intention to bring suit in the United States, it is evidence of [a] willingness to employ litigation . . . to protect [the patentee's] rights." 301 F. Supp. at 1038 (citing *Hakuto Co., Ltd. v. Emhart Indus., Inc.*, No. 88 C 3659, 1989 WL 24118, *3 (N.D. Ill. Mar. 13, 1989)).

Plaintiffs contend that the Court should not consider their foreign litigation, citing the Second Circuit's ruling in *Dr. Beck & Co., GmbH, v. Gen'l Electric Co.*, 317 F.2d 538 (2d Cir. 1963) ("*Dr. Beck*"). In that case, the Second Circuit affirmed dismissal of the noninfringement claim because the charges of infringement were made by agents who lacked authority to bring such a charge on behalf of the defendant. 317 F.2d at 539. The Second Circuit also considered "the insufficiency of plaintiff's proof that it had serious plans to do business in the United States." *Id.* Here, there is no dispute that foreign litigation was brought by parties with authority to also bring an infringement claim in the United States and, as to the second consideration, that SIG Sauer is already doing business in the United States. *Dr. Beck* is therefore distinguishable and does not control whether this Court may consider past foreign litigation involving the same parties engaged in the instant dispute. *See, e.g., Ethicon*, 369 F. Supp. at 938 (noting that "*Dr. Beck* involved fewer United States contacts than the facts in the instant case.").

Arguing that the Court should consider foreign litigation, SIG Sauer relies in part upon *Morphosys AG v. Cambridge Antibody Ltd.*, 62 F. Supp. 2d 100 (D.D.C. 1999) ("*Morphosys*"). In *Morphosys*, the defendant previously filed suit against the plaintiff in Germany for infringement of its European patents.

10

The patent asserted in the foreign litigation was the foreign counterpart of the U.S. patent, and the lawsuit was based on a product manufactured and sold by plaintiff in the United States. There also was evidence that the defendant had threatened the plaintiff and its licensees, both directly and indirectly, regarding the potential impact of the defendant's U.S. patent on anyone using a similar technology. The *Morphosys* court considered all those factors and found the plaintiff had a "reasonable apprehension of suit." 62 F. Supp. 2d at 102.

This case is like *Morphosys* in several respects, including the fact of foreign patent litigation on a counterpart patent where the same product was being marketed in the United States. *Morphosys* also considered the threats of patent enforcement in the United States. This Court similarly considers threatening conduct beyond the ongoing foreign litigation. *See SanDisk Corp. v. Audio MPEG, Inc.*, No. C06-02655 RMW, 2007 WL 30598, at *5 (N.D. Cal. Jan. 3, 2007) ("the assertion of foreign patents in infringement actions, without more, does not create a reasonable apprehension.").

SIG Sauer highlights two instances of additional threatening conduct: (1) GD-OTS's letter in 2019, which specifically mentioned the '238 patent, and (2) the pending misappropriation claim. SIG Sauer also claims that the former GD-OTS patent is now in the hands of a litigious party. As to

11

the 2019 GD-OTS allegation, the Court acknowledges that GD-OTS is a predecessor in interest and not the current patent holder. In *Electro Medical Systems S.A. v. Cooper Lasersonics, Inc.*, the court addressed the impact of a foreign infringement suit brought by a predecessor in interest. 617 F. Supp. 1036, 1038 (N.D. Ill. 1985) ("*Electro Medical*"). The defendant in that case argued that the actions of its predecessor did not factor into the subject matter jurisdiction analysis. *Id.* The *Electro Medical* court disagreed, concluding that "the prior suits were brought on the exact same patents at issue and the exact same [] products" and therefore provided "sufficient basis for reasonable apprehension of identical suits in the United States." *Id.* That same logic applies here to the letter from GD-OTS. GD-OTS raised the question of patent infringement regarding the same technology and the same product at issue in this case. While the patent is now in different hands, a prior owner's threat is a relevant consideration.[3]

---

[3] In *Dr. Beck*, the Second Circuit held that threats of an infringement action by unauthorized agents of the defendant did not contribute to a reasonable fear that such action would be brought by the defendant itself. 317 F.2d at 539. Although it could be argued that an allegation of infringement by a predecessor in interest carries equally little weight, the Second Circuit also found it significant that the plaintiff lacked proof of plans to do business in the United States. *Id.* The Court again finds *Dr. Beck* distinguishable, and that under the "all the circumstances" test established more recently in *MedImmune*, it may consider the threat issued by GD-OTS. 549 U.S. at 127.

The pending misappropriation claim is also relevant. SIG Sauer argues that a cause of action for trade secret misappropriation regarding the same, or similar, technology claimed in the '238 patent necessarily constitutes a threat. *See* ECF No. 42 at 16 (arguing that "it stands to reason that a plaintiff claiming SIG Sauer misappropriates its [] trade secrets would also claim SIG Sauer infringes its [] patents"). SIG Sauer's position is supported by several appellate court rulings finding that a misappropriation claim is relevant to subject matter jurisdiction in a declaratory judgment action for noninfringement. *See U.S. Water Servs., Inc. v. ChemTreat, Inc.*, 794 F.3d 966, 976 (8th Cir. 2015) (applying a "totality of [the] circumstances" standard and holding that a "misappropriation action, together with U.S. Water's statements to its customers and supplier, produced an objective, 'reasonable apprehension of suit'"); *Vanguard Research, Inc. v. PEAT, Inc.*, 304 F.3d 1249, 1255 (Fed. Cir. 2002) (finding subject matter jurisdiction where the defendant had sued the declaratory judgment plaintiff for misappropriation of trade secrets thereby demonstrating "a willingness to protect [its] technology."); *Goodyear Tire & Rubber Co. v. Releasomers, Inc.*, 824 F.2d 953, 955 (Fed. Cir. 1987) (finding subject matter jurisdiction over a patent non-infringement and invalidity action where the defendant had sued the declaratory judgment plaintiff in state court for

13

misappropriation of trade secrets involving the same technology, thereby engaging in "a course of conduct that shows a willingness to protect that technology."). This Court adopts the reasoning of those cases and, considering all of the circumstances cited by SIG Sauer, finds that the totality of Plaintiffs' actions constituted sufficient "affirmative acts" to support subject matter jurisdiction. *Assoc. for Molecular Pathology*, 653 F.3d at 1343.

The second requirement for subject matter jurisdiction – meaningful preparation to conduct potentially infringing activity – is easily satisfied. SIG Sauer is allegedly making and/or offering its products for sale to the United States government. Accordingly, it is already engaged in activity that Plaintiffs might allege infringes their patent rights. *See Cat Tech LLC v. Tube Master, Inc.*, 528 F.3d 871, 881-82 (Fed. Cir. 2008).

Plaintiffs' alternative argument for dismissal is that the Court should exercise its "unique and substantial discretion" applicable to declaratory judgment actions. *MedImmune*, 549 U.S. at 136. The Second Circuit has stated that a district court may consider the following five factors in exercising its discretion under the Declaratory Judgment Act: (1) "whether the judgment will serve a useful purpose in clarifying or settling the legal issues involved"; (2) "whether a judgment would finalize the

14

controversy and offer relief from uncertainty"; (3) "whether the proposed remedy is being used merely for 'procedural fencing' or a 'race to *res judicata*'"; (4) "whether the use of a declaratory judgment would increase friction between sovereign legal systems or improperly encroach on the domain of a state or foreign court"; and (5) "whether there is a better or more effective remedy." *Dow Jones & Co., Inc. v. Harrods Ltd.*, 346 F.3d 357, 359 (2d Cir. 2003) (citations omitted).

Plaintiffs first argue that this Court should not hear SIG Sauer's noninfringement counterclaim because Plaintiffs themselves could not sue for patent infringement in the District of Vermont. The patent venue statute, 28 U.S.C. § 1400(b), requires that the defendant in an infringement action either reside in, or a have a principal place of business in, the forum. SIG Sauer could thus only be sued for infringement in Delaware or New Hampshire. That fact, however, has no bearing on whether SIG Sauer may bring a noninfringement claim here, since venue for such a claim is governed by the general civil venue statute, 28 U.S.C. § 1391(b). *See, e.g., Hutchinson v. Essence Commc'ns, Inc.*, 769 F. Supp. 541, 544 (S.D.N.Y. 1991).

Plaintiffs next argue that SIG Sauer's declaratory judgment action will not clarify or settle the legal issues in this case. They offer no support for the proposition that a declaratory judgment counterclaim must resolve all of the issues presented

15

in the litigation. Moreover, the question of noninfringement likely overlaps significantly with the question of trade secret misappropriation.

Plaintiffs also contend that litigating noninfringement will not "finalize the controversy" since the two European patents are also in question. *Dow Jones,* 346 F.3d at 359. Those patents are not a part of this case. The instant litigation centers on manufacture and sales within the United States. *See* ECF No. 46 at 3, ¶ 9. While the pending foreign litigation is relevant to the subject matter jurisdiction analysis, the only substantive legal controversy before this Court revolves around domestic activities. *Id.*

The Second Circuit allows courts to consider "procedural fencing," *id.*, and Plaintiffs submit that SIG Sauer is trying to set this case up for a transfer to the Court of Federal Claims. Plaintiffs' argument is undermined by the Court of Federal Claims' conclusion that it does not have the power to issue a declaratory judgment. *Alkire v. United States*, 158 Fed. Cl. 380, 398 (2022) ("This Court lacks authority to issue declaratory judgments under the Declaratory Judgment Act."). Transfer would therefore be improper.

Plaintiffs next argue that rather than allowing SIG Sauer's counterclaim, the Court should instead dismiss the counterclaim and essentially order the parties to wait for the proceedings in

16

Europe to conclude. SIG Sauer counters that the European proceedings will not address its ability to sell to the United States government. While the record on this issue is sparse, the Court acknowledges that the European patent proceedings may well leave issues regarding sales within the United States unresolved.

Finally, Plaintiffs argue that a noninfringement claim in this Court would be inefficient and unfair. They argue that the counterclaim would coincide with SIG Sauer's pending invalidity claim before the Patent Trial and Appeal Board, and could co-exist with or precede Plaintiffs' potential suit against the United States for use of SIG Sauer's product, which would necessarily be filed in the Court of Federal Claims. Although parallel proceedings in multiple courts may give rise to inefficiencies, the Court will not bar SIG Sauer's counterclaim on that basis alone.

In sum, the Court finds that it may assert subject matter jurisdiction over SIG Sauer's counterclaim. Plaintiffs invite the Court to use its discretionary power to dismiss the counterclaim, and the Court declines to do so. The pending motion to dismiss is denied.

## Conclusion

For the reasons set forth above, Plaintiffs' motion to dismiss SIG Sauer's counterclaim (ECF No. 38) is denied.

DATED at Burlington, in the District of Vermont, this 2nd day of July 2025.

/s/ William K. Sessions III
Hon. William K. Sessions III
U.S. District Court Judge
