UNITED STATES DISTRICT COURT
FOR THE
DISTRICT OF VERMONT

TRUE VELOCITY AMMUNITIONS, )
L.L.C. and LONE STAR FUTURE )
WEAPONS, INC., )
                              )
     Plaintiffs, )
                              )
     v. ) Case No. 2:24-cv-522
                              )
SIG SAUER, INC., )
                              )
     Defendant. )

## OPINION AND ORDER

Plaintiffs True Velocity Ammunitions, L.L.C. ("True Velocity") and Lone Star Future Weapons, Inc. ("Lone Star") bring this action claiming trade secrets misappropriation by Defendant SIG Sauer, Inc. ("SIG Sauer"). Pending before the Court is SIG Sauer's motion to enter a protective order with specific provisions. For the reasons set forth below, the motion is granted in part and denied in part.

## Background

Plaintiffs True Velocity and Lone Star compete with SIG Sauer to provide military weapons. Plaintiffs claim that SIG Sauer has misappropriated trade secrets relating to machine gun technologies in violation of the Vermont Trade Secrets Act, 9 V.S.A. § 4601, *et seq.* Pending before the Court is SIG Sauer's motion to enter a proposed protective order. While the parties agree that a protective order is necessary, they ask the Court

to resolve two fundamental issues: (1) whether the protective order should include a patent prosecution bar, and if so, the terms of such a bar; and (2) whether the definition of "expert" should exclude only the parties' current employees, or extend to their past employees and employees of the parties' competitors.

## Discussion

### I. Patent Prosecution Bar

In the context of discovery, "[t]he court may, for good cause, issue an order to protect a party or person from annoyance, embarrassment oppression, or undue burden or expense . . . ." Fed. R. Civ. P. 26(c)(1). Good cause exists where "a party shows that disclosure will result in a clearly defined, specific and serious injury." *In re Terrorist Attacks on September 11, 2001*, 454 F. Supp. 2d 220, 222 (S.D.N.Y. 2006). "[T]he grant or denial of a protective order lies within the sound discretion of the district court." *Dove v. Atl. Capital Corp.*, 963 F.2d 15, 20 (2d Cir. 1992).

The good cause standard applies to "a party seeking to include in a protective order a provision effecting a patent prosecution bar." *In re Deutsche Bank Tr. Co. Americas*, 605 F.3d 1373, 1378 (Fed. Cir. 2010). A patent prosecution bar prohibits "those who access the opposing party's confidential technical information . . . from prosecuting patents concerning the same technology." *Id.* "[A] party seeking imposition of a patent

2

prosecution bar must show that the information designated to trigger the bar, the scope of activities prohibited by the bar, the duration of the bar, and the subject matter covered by the bar reasonably reflect the risk presented by the disclosure of proprietary competition information." *Edwards Lifesciences AG v. CoreValve, Inc.*, 699 F.3d 1305, 1316 (Fed. Cir. 2012) (quoting *Deutsche Bank*, 605 F.3d at 1381). "[T]he district court has broad discretion to decide what degree of protection is required." *Deutsche Bank*, 605 F.3d at 1380.

The Court of Appeals for the Federal Circuit has established a two-step test to determine the legality of terms in a patent prosecution bar. *Deutsche Bank*, 605 F.3d at 1381; *see also id.* at 1377-78 (holding that Federal Circuit law applies to prosecution bar disputes because they implicate substantive patent law). First, the Court must assess the risk that highly confidential information will be disclosed inadvertently to individuals involved in competitive decision-making, which is defined as "activities, association, and relationship with a client that are such as to involve counsel's advice and participation in any or all of the client's decisions (pricing, product design, etc.) made in light of similar or corresponding information about a competitor." *Id.* at 1378 (quoting *U.S. Steel Corp. v. United States*, 730 F.2d 1465, 1468 n.3 (Fed. Cir. 1984)). Second, the Court must balance that risk

against "the potential harm to the opposing party from restrictions imposed on that party's right to have the benefit of counsel of its choice." *Id.* at 1380.

Here, the parties have agreed that a protective order is necessary, but do not agree that such an order must include a patent prosecution bar. SIG Sauer submits that a patent prosecution bar is necessary because there will likely be exchanges of confidential information that is not the subject of any existing patents, but that could be used in future patent actions. Also, the information could be accessed by Plaintiffs' in-house counsel, with no exclusion for persons involved in competitive decision-making. Plaintiffs contend that the parties' protective orders already prohibit counsel and any experts from using confidential information outside the context of this litigation, and that a separate patent prosecution bar is unnecessary. Plaintiffs also state in their briefing that they will withhold protected materials from in-house counsel. ECF No. 53 at 7.

Plaintiffs further argue that SIG Sauer has no evidence that anyone subject to the proposed bar will be involved in competitive decision-making for Plaintiffs or any other client. As to patent prosecution itself, of the four attorneys representing Plaintiffs in this case, only one is reportedly registered to prosecute patents and that attorney has not been

4

involved with prosecuting a new patent in over eight years. Plaintiffs further represent that a separate law firm provides them with all patent prosecution related services, and that no counsel of record provides advice or otherwise participates in decisions regarding pricing or product design.

SIG Sauer submits that Plaintiffs' assurances are insufficient, as they do not include experts, consultants, or future counsel of record. SIG Sauer also contests the assertion that it carries the burden of showing competitive decision-making roles on a counsel-by-counsel basis. While courts have split on that question, recent decisions suggest that "it would be unrealistic to require the [moving party] to establish risk of inadvertent disclosure of the opposing party's attorneys on a counsel-by-counsel basis because the movant 'would have little to no knowledge of the day-to-day practice for any particular attorney for the opposing party.'" *Rensselaer Polytechnic Inst. v. Amazon.com, Inc.*, No. 118CV549BKSCFH, 2020 WL 13180211, at *8 (N.D.N.Y. Oct. 28, 2020) (quoting *Intellectual Ventures I, LLC v. Lenovo Grp. Ltd.*, No. 16-CV-10860 (PBS), 2019 WL 343242, at *2 (D. Mass. Jan. 25, 2019)). SIG Sauer's ultimate contention is that without a patent prosecution bar, an attorney or expert who accesses its information could impact decision-making in drafting patent claims for an adversary or competitor, "and thus (inadvertently) steer the claim scope of those not-yet-issued

5

patents to cover" its current or future products. ECF No. 50 at 9 (parenthetical in original).

The Court is persuaded that a patent prosecution bar will provide enhanced and necessary protection for the parties' confidential materials. While the Court acknowledges Plaintiffs' assurances, the omission of experts and others with access to the information is cause for concern. Furthermore, the release of such information into the hands of an opposing party creates risks that may be difficult to foresee, as "even the most rigorous efforts of the recipient of such information to preserve confidentiality in compliance with the provisions of [] a protective order may not prevent inadvertent compromise." *Deutsche Bank*, 605 F.3d at 1378; *see also id.* (quoting *FTC v. Exxon Corp.*, 636 F.2d 1336, 1350 (D.C. Cir. 1980) ("[I]t is very difficult for the human mind to compartmentalize and selectively suppress information once learned, no matter how well-intentioned the effort may be to do so.")). While imposition of a patent prosecution bar is not automatic in every case involving confidential information, the parties' acknowledged histories of pursuing patents to protect their technologies renders such a bar particularly appropriate here. Finally, there is little indication that a patent prosecution bar will inhibit Plaintiffs from employing counsel of their choice, either now or in the future. *See Deutsche Bank*, 605 F.3d at 1380.

The Court will therefore proceed to the specifics of the proposed patent prosecution bar to ensure that it complies with standards set forth by the governing case law. *See, e.g., id.* at 1377-80.

### A. Subject Matter

Both sides have submitted draft protective orders that include a patent prosecution bar, yet the terms of the proposed bars differ in several respects. First, the parties disagree about whether the patent prosecution bar would apply to "automatic firearm technology" as proposed by SIG Sauer, or only to "impulse averaged recoil mitigation technology incorporated in lightweight medium machine guns" as proposed by Plaintiffs. ECF No. 50-3 at 16. Plaintiffs contend that SIG Sauer's definition is too broad since, for example, it would prevent their attorneys from engaging in any patent prosecution related to automatic firearms for the duration of the bar. SIG Sauer argues that the Plaintiffs' limitation uses terms that are undefined and leaves much of its confidential information unprotected.

The subject matter of a protective order is dictated in part by the scope of the requested discovery. *See, e.g., Telebuyer, LLC v. Amazon.com, Inc.*, No. 13-CV-1677, 2014 WL 5804334, at *4 (W.D. Wash. July 7, 2014) ("A broad discovery request invites a broad protective order."); *Avocent Redmond*

7

*Corp. v. Rose Electronics*, 242 F.R.D. 574, 577 (W.D. Wash 2007) (noting that the court must balance a "party's right to broad discovery and the other party's ability to protect its confidential materials from misuse by competitors") (citing *U.S. Steel Corp.*, 730 F.2d at 1468). Plaintiffs have requested production of all "product development materials" including "all design documents, blueprints, technical data packages, testing procedures, and testing results related to SIG's belt-fed machine guns." ECF No. 50-6 at 3. Their request for "technology development records" is narrower, focusing more specifically on recoil mitigation systems. *Id.* SIG Sauer's concern centers on the broad production materials request, as that information will reportedly include confidential information beyond the recoil mitigation systems.

 Plaintiffs' proposed limitation is problematic in at least two respects. First, although they propose limiting the bar to "impulse averaged recoil mitigation technology," they have also objected to the term "recoil mitigation technology" as undefined. ECF No. 50-5 at 4 (response to SIG Sauer's interrogatories). Second, their discovery requests seek materials that go well beyond that limited context and, as SIG Sauer suggests, will likely include other confidential information.

Considering the information that is likely to be exchanged, the Court finds that SIG Sauer's subject matter definition of "automatic firearm technology" is more reasonable, though overly broad. "Automatic firearm technology" encompasses far more than the technologies at issue in this case. Indeed, barring prosecution relating to all "automatic firearm technologies" fails to tailor the proposed bar to "information related to new inventions and technology under development." *Deutsche Bank*, 605 F.3d at 1381. Nonetheless, Defendants' discovery request is broad, as they seek a wide range of information regarding SIG Sauer's belt-fed machine guns. The subject matter of any patent prosecution bar shall therefore apply to automatic firearm technologies applicable to the type(s) of machine guns at issue here.

B. **Duration**

The parties next dispute the duration of the proposed bar. SIG Sauer proposes a bar that expires three years after final termination of this case, including any appeals and remands. Plaintiffs argue for a bar of no more than two years after this Court's entry of judgment. The case law supports Plaintiffs' position, as "[c]ourts routinely hold that prosecution bars with two-year durations are reasonable." *Front Row Techs., LLC v. NBA Media Ventures, LLC*, 125 F. Supp. 3d 1260, 1283 (D.N.M. 2015) (collecting cases); *see Catch A Wave Techs., Inc. v. Sirius XM*

9

*Radio, Inc.*, No. C 12-05791 (WHA), 2013 WL 9868422, at *1 (N.D. Cal. Aug. 6, 2013) ("The two-year patent acquisition bar allows time for the limitations of human memory to run their course or for the information to become largely stale."). Courts have also found it sufficient to commence the two-year bar on the date the district court enters final judgment, rather than delaying until all appeals and remands have been exhausted. *See Eon Corp. IP Holdings, LLC v. AT & T Mobility LLC*, 881 F. Supp. 2d 254, 258 (D.P.R. 2012) ([T]he bar's duration should not be determined by this case's future life in the courts of appeals."); *see also* James Juo and David J. Pitman, *A Prosecution Bar in Patent Litigation Should Be the Exception Rather Than the Rule*, 15 Va. J.L. & Tech. 43 (2010) ("The length of time to exhaust all appeals is not relevant to the technology or any patent prosecution concerns, and should not be a basis for extending the duration of a patent prosecution bar."). SIG Sauer's motion on this point is therefore denied.

### C. Non-Parties

SIG Sauer next proposes that the patent prosecution bar apply to any client of counsel, and not just to the parties in this case. The purpose of the patent prosecution bar is to "reasonably reflect the risk presented by the disclosure of proprietary competitive information," and that risk exists with any person or entity whom counsel might represent in the future.

10

*See Telebuyer*, 2014 WL 5804334, at *5 ("The harm is identical whether confidential information is inadvertently used on behalf of [the party to the litigation] or another client."). The Court therefore finds SIG Sauer's position – which Plaintiffs' briefing does not contest – persuasive, and grants the motion with respect to the inclusion of non-parties.

### D.  Post-Grant Activities

Under federal law, a patent holder may amend its patent claims during post-grant proceedings reviewing the patent's validity. 35 U.S.C. § 316. SIG Sauer argues that the patent prosecution bar must extend to the representation of parties in such proceedings. Plaintiffs' proposal excludes post-grant proceedings. Their briefing notes that amendments in post-grant proceedings are limited and may not "enlarge the scope of a claim nor introduce new matter." ECF No. 53 at 9 (citing Manual of Patent Examining Procedure § 2666.01). SIG Sauer responds that although claims may only be narrowed in post-grant proceedings, the narrowing can alter the claim "in a way that preserves [its] validity but still covers products of the defendants." ECF No. 55 at 11 (quoting *British Telecomm. PLC v. IAC/InterActiveCorp*, 330 F.R.D. 387, 398 (D. Del. 2019) (*British Telecomm*)).

SIG Sauer relies in part on *British Telecomm*, which conducted a thorough review of the case law on this question.

11

330 F.R.D. at 395-98. *British Telecomm* ultimately found that "[w]hile the courts are divided in their approach to this issue, this Court finds the approach taken by the courts that have imposed a bar on participation in drafting and amending claims to strike an appropriate balance between the parties' competing interests." *Id.* at 398. The court also noted that "the trend of recent decisions by courts in this district as well as elsewhere has been to adopt some form of restriction on the activity of patentees' litigation counsel in post-grant review proceedings." *Id.* Consistent with that "trend," this Court finds that the patent prosecution bar shall apply to representation in post-grant proceedings, but only to the extent that counsel may not participate in drafting and amending claims. *See id.*

### E. Information Designated to Trigger the Bar

The parties further dispute the type of information that would trigger the patent prosecution bar. SIG Sauer moves to have the bar apply to any person who has viewed information designated as "HIGHLY CONFIDENTIAL – ATTORNEYS' EYES ONLY," while Plaintiffs would limit the bar to any person who viewed materials designated as "HIGHLY CONFIDENTIAL – PROSECUTION BAR" where those materials include "[i]nformation or items that concern[] the technical details of the design of future products and/or modification of existing products" that cannot be determined based on public information. ECF No. 50-3 at 4. SIG

12

Sauer argues that protection of only future products or modifications is too narrow, as much of its confidential technology is pre-existing. Plaintiffs contend that the trigger should be limited to technical materials. "In evaluating whether to grant a patent prosecution bar in the first instance, a court must be satisfied that the kind of information what will trigger the bar is relevant to the preparation and prosecutions before the PTO." *Deutche Bank*, 605 F.3d at 1381. Such information is not necessarily limited to future developments or modifications. Indeed, in this case the allegations include purported trade secrets that were developed over a decade ago. Plaintiffs' limitation to "future products and/or modification of existing products" is therefore too narrow.

Plaintiffs' limitation to technical matters is consistent with the Federal Circuit case law, which holds that "financial data and other sensitive business information, even if deemed confidential, would not normally be relevant to a patent application and thus would not normally be expected to trigger a patent prosecution bar." *Id.* SIG Sauer has conceded this point. ECF No. 55 at 10. SIG Sauer maintains, however, that labeling materials as "HIGHLY CONFIDENTIAL – ATTORNEYS' EYES ONLY" is sufficient, and that another tier of labeling for the prosecution bar ("HIGHLY CONFIDENTIAL – PROSECUTION BAR") is unnecessary and needlessly burdensome. Plaintiffs' briefing does

not defend their proposal for separate labeling, and the Court agrees that "attorneys' eyes only" is sufficient. SIG Sauer's motion on this issue is therefore granted in part and denied in part.

**II. Definition of "Expert"**

The final disputed issue is the definition of "expert" in the proposed order. Plaintiffs contend that no such definition is necessary since both proposed orders allow either party to object to an expert. SIG Sauer submits that a definition is necessary, in part, to provide guidelines for such an objection. SIG Sauer's proposal would exclude past or current employees of the parties or the parties' competitors. ECF No. 50-2 at 4. Plaintiffs argue that if a definition is required, the term "competitor" is "vague and unworkable" and that barring persons who have worked in the industry would severely limit the field of potential experts. ECF No. 53 at 16. Plaintiffs also propose excluding only current employees of the parties or those who, at the time of retention, are not anticipated to become a party employee. ECF No. 53-5 at 4.

SIG Sauer's proposal is identical to language in a Model Protective Order from the United States District Court for the Northern District of California, which Plaintiffs attached to their briefing. *See* ECF Nos. 50-2 at 4, 53-7 at 3. Given the source, the Court does not find the terms of SIG Sauer's

14

restriction to be vague, unworkable, or overly broad. *See, e.g., FarStone Tech., Inc. v. Apple Inc.*, No. 8:13-CV-01537-ODW, 2014 WL 2865786, at *2 (C.D. Cal. June 24, 2014) (characterizing the Northern District of California's Model Protective Order as "a solid foundation"). SIG Sauer's motion with respect to defining the term "expert" is granted.

## Conclusion

For the reasons set forth above, SIG Sauer's motion to enter a proposed protective order (ECF No. 50) is granted in part and denied in part.

DATED at Burlington, in the District of Vermont, this 11th day of July, 2025.

/s/ William K. Sessions III
Hon. William K. Sessions III
U.S. District Court Judge